IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:                                    )
DELTA PRODUCE, ET AL.,                    )
                                          )
    Debtors.                             )
_____               )
BERNARDI & ASSOCIATES, INC.,              )
ET AL.,                                   )
                                          )        NO. SA-12-MC-1164-DAE
          Appellants,         )        Bankruptcy Case No. 12-50073-a998
                                          )        Bankruptcy Case No. 12-50074-a998
    vs.                                  )
                                          )
I. KUNIK CO., INC., ET AL.,               )
                                          )
          Appellees.          )
_____               )

<u>ORDER GRANTING MOTION FOR LEAVE TO APPEAL</u>

        Before the Court is a Motion for Leave to Appeal the Bankruptcy

Court's November 8, 2012 Order Granting in Part and Denying in Part PACA

Creditor's Applications for Attorneys' Fees.  After careful consideration, and for

the reasons given below, the Court **GRANTS** the Motion for Leave to Appeal.

<u>BACKGROUND</u>

        On January 3, 2012, Delta Produce, L.P. filed a voluntary petition

under Chapter 11 of the Bankruptcy Code.  (Bankr. Case No. 12-50073 ("Bankr."),

doc. # 1.)  On the same day, Superior Tomato-Avocado, Ltd. filed a voluntary

petition under Chapter 11 of the Bankruptcy Code.  On January 19, 2012, the

Bankruptcy Court entered an order directing that the two cases be jointly

administered.  (Bankr. doc # 29.)

        On September 13, 2012, certain trust creditors under the Perishable

Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e, et seq.—including the

"R&J Group"[1]—filed claims for attorneys' fees and costs in the instant matter

pursuant to the deadlines established by the Bankruptcy Court.  On October 12,

2012, the Principal of the Debtor, Walter Scott Jensen ("Jensen"), filed Omnibus

Objections to PACA Trust Creditors' Applications for Attorneys' Fees, arguing

that PACA trust creditors are "unsecured creditors" and, as such, are not entitled to

attorneys' fees.  (Bankr. doc. # 331.)  Soon thereafter, the R&J Group filed a

response in opposition to Jensen's objections.  (Bankr. doc. # 335.)

        On November 2, 2012, the Bankruptcy Court held a hearing on the

PACA trust creditors' claims for attorneys' fees.  (Bankr. doc. # 403.)  The

---

[1] The "R&J Group" consists of Bernardi and Associates, Inc., DiMare Enterprises, Inc., Frank's Distributing of Produce, LLC, Fresh Pac International, Inc., Harvest Crown Co. Inc.,  J-C Distributing, Inc., Mission  Produce, Inc., California Artichoke & Veg Growers Corp. d/b/a Ocean Mist Farms, Pacific International Vegetable Marketing Inc. d/b/a Pacific International Marketing, Prime Time Sales, LLC, Royal Flavor, LLC, Uesugi Farms, Inc., and Wilson Produce, LLC.

Bankruptcy Court ruled from the bench that PACA trust creditors are "unsecured creditors" under the Bankruptcy Code and therefore not entitled to post-petition attorneys' fees.  (Id. at 37:23 to 38:15.)  The Bankruptcy Court entered a written order to that effect on November 8, 2012.  (Bankr. doc. # 399.)

On December 7, 2012, the R&J Group filed the instant Motion for Leave to Appeal, arguing that the Bankruptcy Court erred in denying their claims for attorneys' fees.  (Doc. # 1.)  No opposition to the motion was filed by any party.

## DISCUSSION

### I.   Standard for Granting Leave to Appeal

Pursuant to 28 U.S.C. § 158, "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges."  28 U.S.C. § 158.  The Fifth Circuit has held that "[t]he decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion."  In re O'Conner, 258 F.3d 392, 399–400 (5th Cir. 2001).

In determining whether to grant leave to appeal an interlocutory order from a bankruptcy court, courts in the Fifth Circuit use the standard under 28 U.S.C. § 1292(b), which governs interlocutory appeals from district court orders.

See In re Cent. La. Grain Co-op., Inc., 489 B.R. 403, 408 (W.D. La. 2013) (gathering cases); see also Matter of Ichinose, 946 F.2d 1169, 1177 (5th Cir. 1991) (noting that a majority of district courts have applied the § 1292(b) test).  The § 1292(b) standard consists of three elements: "(1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation."  Ichinose, 946 F.2d at 1177.

"Because interlocutory appeals interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties, they are not favored."  In re Hunt Int'l Res. Corp., 57 B.R. 371, 372 (N.D. Tex. 1985) (internal citations omitted).  The party seeking interlocutory review has the burden of persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after final judgment.  See Burnley v. City of San Antonio, No. Civ. A. SA-02-CA-0489, 2004 WL 377524, *1 n.1 (W.D. Tex. Jan. 22, 2004).

II.    Application

A.    Controlling Issue of Law

The first § 1292(b) element is whether the appeal involves a controlling issue of law.  See Ichinose, 946 F.2d at 1177.  A controlling question of

law "might be called one of 'pure' law" that can be reviewed "quickly and cleanly without having to study the record."  McFarling v. Conseco Servs., LLC, 381 F.3d 1251, 1258 (11th Cir. 2004) (citation omitted).  The term "question of law" does not mean the application of settled law to fact.  Id. (citing Ahrenholz v. Board of Trustees of Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000)); see Clark-Dietz & Assoc.-Eng'rs. v. Basic Constr. Co., 702 F.2d 67, 69 (5th Cir. 1983) (denying § 1292(b) petition where issues presented "appear to be merely fact-review questions").  Thus, the appeals court should not be required to "hunt[] through the record" to determine "whether there may be a genuine issue of material fact lurking there."  Ahrenholz, 219 F.3d at 677.  Additionally, a controlling question of law has precedential value for a large number of cases.  Ryan v. Flowserve Corp., 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006).

        The R&J Group argues that a controlling question of law exists with regard to the right of PACA trust creditors to recover attorneys' fees as "sums owing in connection with" a perishable agricultural transaction.  Congress originally enacted the PACA "to regulate the sale of perishable commodities and promote fair dealing in the sale of fruits and vegetables."  Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 413 (5th Cir. 2003) (citations omitted) (internal quotation marks omitted).  The PACA requires buyers of

produce to make "full payment promptly" and creates, immediately upon delivery

of the produce, a nonsegregated "floating" trust in favor of unpaid sellers, which

attaches to the products themselves and any proceeds.  <u>Bocchi Americas Assocs.</u>

<u>Inc. v. Commerce Fresh Mktg. Inc.</u>, 515 F.3d 383, 388 (5th Cir. 2008) (citing 3877

U.S.C. § 499e(c)(2), 7 C.F.R. § 46.46(b)).  "If the seller is not paid promptly, the

buyer must preserve trust assets, and the seller has a 'superpriority' right that

trumps the rights of the buyer's other secured and unsecured creditors."  <u>Id.</u>

The R&J Group seeks a determination whether a contractual claim for

attorneys' fees and prejudgment interest is recoverable as part of a PACA trust

claim in the bankruptcy context.  This is a question of "pure" law that depends on

the statutory interpretation of the language "full payment of the <u>sums owing in</u>

<u>connection with</u> [perishable agricultural commodities] transactions" within 7

U.S.C. § 499e(c)(2).  Moreover, because the issue on appeal determines the amount

of trust assets to which PACA trust creditors with contractual claims to attorneys'

fees are legally entitled, it will have precedential value for a large number of cases.

 B. <u>Substantial Ground for Difference of Opinion</u>

The second § 1292(b) element is whether there is a "substantial

ground for difference of opinion" as to the issue on appeal.  <u>See</u> <u>Ichinose</u>, 946 F.2d

at 1177.  "[S]imply because a court is the first to rule on a question or counsel

disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." <u>Flowserve Corp.</u>, 444 F. Supp. 2d at 724. However, relevant here, substantial grounds for difference of opinion exist where "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue." <u>In re Cent. La. Grain Co-op.</u>, 489 B.R. at 412 (citing <u>In re Hallwood Energy, L.P.</u>, 3:12-CV-1902-G, 2013 WL 524418, at *3 (N.D. Tex. Feb. 11, 2013)).

   In this case, the Fifth Circuit has not yet ruled on the right of PACA creditors to recover attorneys' fees as "sums owing in connection with" a perishable agricultural transaction.  The Second, Ninth, and Eleventh Circuits have addressed this issue and found that prejudgment interest and attorneys' fees, if bargained for by contract, are "sums owing in connection with" perishable commodities transactions.  <u>See</u> <u>Coosemans Specialties, Inc. v. Gargiulo</u>, 485 F.3d 701, 709 (2d Cir. 2007); <u>Country Best v. Christopher Ranch, LLC</u>, 361 F.3d 629, 633 (11th Cir. 2004); <u>Middle Mountain Land & Produce, Inc. v. J.R. Simplot Co.</u>, 307 F.3d 1220, 1225 (9th Cir. 2002).

   Although the Bankruptcy Court acknowledged, without further elaboration, that "the language of the PACA statute, does, in fact, include attorneys' fees," it ultimately held that the trust beneficiaries were "unsecured

7

creditors" and were not entitled to any post-petition attorneys' fees.  (Bankr. doc.
# 403 at 37:23 to 38:15.)  The Bankruptcy Court's order appears to conflict with
the decisions of the Second, Ninth, and Eleventh Circuits.  "Ordinary principles of
trust law apply to trusts created under PACA, so that for instance the trust assets
are excluded from the estate should the dealer go bankrupt."  Ruby Robinson Co.,
Inc. v. Herr, 453 F. App'x 463, 465 (5th Cir. 2011) (quoting Sunkist Growers, Inc.
v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997)); see also In re Kornblum & Co., Inc.,
81 F.3d 280, 284 (2d Cir. 1996) ("[T]he Bankruptcy Code excludes PACA trust
assets from the bankruptcy estate.").  Thus, as long as contractually obligated
attorneys' fees are "sums owing in connection with" the perishable agricultural
transaction, they would be recoverable as part of the PACA trust res.  Because the
Bankruptcy Court's order is incompatible with the decisions of the Second, Ninth,
and Eleventh Circuits, there exists substantial grounds for difference of opinion as
to the issue on appeal.

     C.    <u>Material Advancement of Litigation</u>

     The third § 1292(b) element is whether resolution of the "controlling
question of law" would "materially advance the ultimate termination of the
litigation."  See Ichinose, 946 F.2d at 1177.  This analysis turns on whether "[a]n
immediate appeal would conserve judicial resources and spare the parties from

possibly needless expense." APCC Servs., Inc. v. Sprint Commc'ns Co., L.P., 297 F. Supp. 2d 90, 100 (D.D.C. 2003).

The R&J Group's right to attorneys' fees under the PACA will have an important impact on the underlying bankruptcy proceedings of Delta Produce, LP and Superior Tomato-Avocado, Ltd.  As explained above, the PACA requires produce dealers to maintain proceeds from produce sales in floating trusts so that, if the dealer becomes insolvent, the produce sellers may claim a pro-rata share of the trust funds before other creditors.  See Bocchi Americas Assocs., 515 F.3d at 388.  The PACA trust funds will be distributed to qualified trust claimants prior to an ultimate discharge of the bankruptcy proceedings.  Therefore, if those PACA trust creditors contractually entitled to attorneys' fees are not permitted to collect those fees, other PACA trust creditors may receive a larger pro-rata share of the trust funds than appropriate.  Resolution of the issue on appeal will advance the underlying bankruptcy litigation by preventing the R&J Group (and others similarly situated) from receiving less than their fair share of the PACA trust res. Additionally, even if the R&J Group appealed the matter of attorneys' fees after the final bankruptcy discharge, the group argues that it would be "cost prohibitive" to litigate recovery of attorneys' fees from those PACA trust creditors who received an unduly large portion of the trust res.  This Court agrees.  Permitting an

appeal on the discrete issue of attorneys' fees will prevent the inequitable

distribution of the PACA trust assets and will save the parties the considerable

expense of litigating the matter after the final bankruptcy discharge.  Thus, the

Court finds that the third § 1292(b) element is met in this case.  Because all three

prongs of the § 1292(b) test have been satisfied, the Court grants the R&J Group's

Motion for Leave to Appeal.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** the R&J Group's

Motion for Leave to Appeal.

IT IS SO ORDERED.

DATED: San Antonio, Texas, June 28, 2013.

_____

David Alan Ezra
Senior United States District Judge